D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
REGINALD BERNARD LEGETTE,

       Plaintiff,

 -against-

CAROLYN W. COLVIN, Acting Commissioner of
Social Security,[1]

       Defendant.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**12-CV-04831 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Claimant, Reginald Bernard Legette,[2] brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Social Security Administration's ("SSA") decision that he is not disabled and therefore is not entitled to disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Compl. (Dkt. 1).) Defendant, Acting Commissioner of Social Security, has filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) to affirm the SSA's decision and dismiss the action. (Def. Mot. (Dkt. 16).) For the reasons set forth below, Defendant's motion is DENIED and the case is REMANDED.

**I. BACKGROUND**

**A. The Claimant**

Claimant was born on September 18, 1963, with hemophilia. (Administrative Record ("Admin. R.") (Dkt. 10) at 75-80.) Claimant received a blood transfusion contaminated with the human immunodeficiency virus ("HIV") in 1974. (Id. at 24.) Claimant attended school through the eleventh grade. (Id. at 22.) Claimant claims he has never worked due to his hemophilia. (Id.

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. She has, therefore, been substituted as the named Defendant pursuant to Federal Rule of Civil Procedure 25(d). See 42 U.S.C. § 405(g). The Clerk of Court is respectfully directed to change the caption accordingly.
[2] For the remainder of this Order, Plaintiff Reginald Bernard Legette, will be referred to as Claimant.

1

at 24.) According to Claimant, hemophilia causes his "legs ... ankles ... [and] joints [to] really swell." (Id.) Claimant states that his knee swells, he cannot lift anything heavy, and he cannot walk for more than five minutes without taking a ten-minute break. (Id. at 26-28.) Claimant spends his days taking care of his autistic twenty-three-year-old daughter who lives with him, going to church, reading, and watching television. (Id. at 96-104.) Claimant has three children who do not live with him: a nineteen-year-old daughter, a twenty-six-year-old son, and a seventeen-year-old daughter. (Id. at 22.) Claimant was diagnosed with hypertension on May 21, 2010. (Id. at 139.) Claimant states that he is very anxious about his medical conditions, which has caused emotional issues. (Id. at 4, 113.) Claimant was diagnosed with diabetes on December 8, 2012. (Pl.'s Jan. 15, 2013, Ltr. ("Pl. Ltr.") (Dkt. 4).)

### B. Procedural History

Claimant filed a pro se application for SSI benefits on January 31, 2010, alleging that he has been disabled since January 1, 2010.[3] (Admin. R. at 96.) He claimed that he was unable to work due to hemophilia. (Id. at 98.) The SSA denied Claimant's application on May, 28, 2010. (Id. at 40.)[4] Claimant requested a hearing on June 8, 2010, and appeared before Administrative Law Judge ("ALJ") Margaret A. Donaghy on November 17, 2010. (Id. at 45, 17.) On February 25, 2011, the ALJ concluded that Claimant was not disabled within the meaning of the Social Security Act. (Id. at 6-16.) Claimant requested review of the ALJ's decision by the SSA Appeals Council, which was denied on February 25, 2011, rendering the ALJ's decision the final decision of the Commissioner. (Id. at 1-3.) See 42 U.S.C. §§ 405(g), 1383(c); 20 C.F.R. § 422.210(a). Claimant then filed the Complaint in this court, seeking review of that decision

---

[3] There is nothing in the record that explains what occurred on this date.
[4] According to a Field Office Disability Report completed by D. Slavin on February 4, 2010, Claimant was given an "Allowance" based on an "initial" decision on July 4, 1974, which was terminated in October 2008. (Admin. R. at 94.) There is no evidence as to the change in status in 2008.

2

under 42 U.S.C. §§ 405(g). (Compl.) On January 22, 2013, Claimant submitted a letter stating that he was diagnosed with diabetes on December 8, 2012, and is currently on medication for this illness. (Pl. Ltr. at 1.)

On May 24, 2013, Defendant filed her Answer to the Complaint. (Answer (Dkt. 11).) Defendant then served Claimant with the Motion for Judgment on the Pleadings and supporting memorandum on July 22, 2013. (Def. July 22, 2013, Ltr. (Dkt. 12).) Claimant did not serve a response to the motion, which was due on July 23, 2013. (Sched. Order (Dkt. 5).) The court instructed Claimant to respond to the Commissioner by October 15, 2013. (Sept. 6, 2013, Order (Dkt. 14).) If Claimant failed to do so, the court instructed Defendant to file the motion with the court. (Id.) The Motion for Judgment on the Pleadings was filed on October 18, 2013, without any response from the Claimant. (Def. Mot.) The court, therefore, deems Defendant's motion unopposed.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). The standard for reviewing a Rule 12(c) motion is the same standard that is applied to a Rule 12(b)(6) motion to dismiss for failure to state a claim. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). To survive, the complaint must contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). A court

is required "to accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008). In addition to the pleadings, the court may consider "statements or documents incorporated by reference in the pleadings . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Schaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

### B. Administrative Review

"The role of a district court in reviewing the Commissioner's final decision is limited." Pogozelski v. Barnhart, No. 03-CV-2914 (JG), 2004 WL 1146059, at *9 (E.D.N.Y. May 19, 2004). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998); see also Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). Thus, as long as (1) the ALJ has applied the correct legal standard, and (2) its findings are supported by evidence that a reasonable mind would accept as adequate, the ALJ's decision is binding on this court. See Pogozelski, 2004 WL 1146059, at *9.

### C. Determination of Disability

"To receive federal disability benefits, an applicant must be 'disabled' within the meaning of the [Social Security] Act." Shaw, 221 F.3d at 131; see also 42 U.S.C. § 423. A

claimant is "disabled" within the meaning of the Act if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The SSA has promulgated a five-step procedure for determining whether a claimant is "disabled" under the Act. See 20 C.F.R. § 404.1520(a)(4). In Dixon v. Shalala, 54 F.3d 1019 (2d Cir. 1995), the Second Circuit described this five-step analysis as follows:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied.
>
> If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.
>
> If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" . . . of the social security regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.
>
> If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied.
>
> If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work

5

experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

Id. at 1022 (internal citations omitted).

The ultimate "burden is on the claimant to prove that he is disabled." Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000) (alterations omitted). But if the claimant shows at step four that his impairment renders him unable to perform his past work, there is a limited shift in the burden of proof at step five that requires the Commissioner "to show there is other gainful work in the national economy that the claimant could perform." Id.

In making the determinations required by the Social Security Act and the regulations promulgated thereunder, "the Commissioner must consider (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience." Pogozelski, 2004 WL 1146059, at *10 (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)). Moreover, "the ALJ conducting the administrative hearing has an affirmative duty to investigate facts and develop the record where necessary to adequately assess the basis for granting or denying benefits." Id. That duty is "heightened" when, as here, the claimant appears at the hearing pro se. Ericksson v. Comm'r of Soc. Sec., 557 F.3d 79, 83 (2d Cir. 2009).

## III. DISCUSSION

Claimant is pro se, and therefore, despite his failure to respond to Defendant's motion, the court has carefully reviewed the entire record. See Hufana v. Apfel, No. 99-CV-3345 (FB), 2000 WL 1210826, at *4 n.1 (E.D.N.Y. Aug. 18, 2000) (refusing, due to claimant's pro se status, to grant the Commissioner's unopposed motion on default, and instead examining the record,

ALJ decision, and motion papers in deciding the motion); Diaz v. Chater, No. 94-CV-5149 (FB), 1996 WL 612492, at *1 n.2 (E.D.N.Y. Oct. 16, 1996) (same).

### A. The ALJ's Review and Decision

Claimant's Complaint does not contain any specific challenges to the ALJ decision; it claims in a conclusory manner, "[t]he decision of the administrative law judge was erroneous, not supported by substantial evidence on the record and/or contrary to the law." (Compl. at 2.) Pro se complaints "must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal citations omitted). Therefore, the court will determine whether the ALJ applied the correct law and whether their determination was based on substantial evidence by using the five-step sequential analysis. See 20 C.F.R. § 404.1520(a)(4); see also Dixon, 54 F.3d at 1022.

In this case, the ALJ reviewed Claimant's application through the prescribed five-step analysis. (Admin. R. at 11-16.) At step one, the ALJ found that Claimant was not engaged in substantial gainful activity. (Id. at 11.) At step two, the ALJ found that Claimant suffered from "the following severe impairments: hemophilia . . . HIV . . . and depressive disorder and possible cognitive disorder." (Id.) At step three, the ALJ determined that "the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Part P, Appendix 1." (Id. at 11-13.) At step four, the ALJ found that "the claimant has the residual functional capacity to perform medium work as defined in 10 C.F.R. 416.967(c), except that he can occasionally climb, and must avoid unprotected heights and hazards." (Id. at 13-15.) Finally, at step five, based the testimony of a vocational expert, the ALJ found that "there are jobs that exist in significant numbers in the national

economy that the claimant can perform." (Id. at 15-16.) Accordingly, the ALJ concluded that claimant was not disabled within the meaning of the Social Security Act. (Id. at 16.)

The court finds that the ALJ properly applied the first two steps of the five-step analysis based on substantial evidence. However, at step three the court finds that the ALJ did not sufficiently develop the record as to the combination of impairments that could equal one of the listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ properly found that Claimant's hemophilia does not equal that in 20 C.F.R. Part 404, Subpart P, Appendix 1 § 7.08 because Claimant did not "spontaneous[ly] hemorrhage requiring transfusion[s] at least three times during the 5 months prior to adjudication." 20 C.F.R. Part 404, Subpart P, Appendix 1. (See Admin. R. at 14.)

The ALJ also properly evaluated whether Claimant has an affective disorder equal to 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04:

> Dr. Flach diagnosed depressive disorder, not otherwise specified, and possible cognitive disorder, not otherwise specified. . . . [Claimant's] attention and concentration were mildly impaired . . . and his recent and remote memory skills were moderately impaired. . . . The claimant's intellectual function was "low average with general fund of information appropriate to experience." . . . Dr. Flach opined that the claimant: (1) can follow and understand simple instructions; (2) has mild problems maintaining attention and concentration; (3) can maintain a regular schedule; (4) can learn new tasks; (5) can perform complex tasks independently; (6) is making appropriate decisions; (7) seems to be adequately relating to others; (8) seems to have some mild problems dealing with stress; and (9) has the ability to manage his own funds. . . . "The results of the examination do appear consistent with some mild psychiatric problems and possible cognitive difficulties which may mildly interfere with the claimant's ability to function on a daily basis."

(Id. at 12 (internal citations omitted).) The ALJ stated that according to Dr. Flach's report, Claimant has moderate difficulties with concentration, persistence, or pace. (Id.) The ALJ also relied on Claimant's testimony that he cares for himself, cares for his daughter, and socializes

8

with friends, in finding that Claimant does not have a mental impairment under section 12.04. (Id.) From Dr. Flach's report and Claimant's testimony, the ALJ found that under section 12.04 paragraph B, Claimant does not have: (1) restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation. (Id. at 12-14.)

However, the record does not fully develop whether Claimant's HIV impairment fulfills the impairment in section 14.00. See 20 C.F.R. Part 404, Subpart P, Appendix 1. The determination of this impairment is explained in section 14.00(G)(1)(f), which states that the cumulative effects of the immune system disorder will be considered in conjunction with the medical treatment being rendered "in terms of its effectiveness in improving the signs, symptoms, and laboratory abnormalities of your specific . . . disorder or its manifestations, and in terms of any side effects that limit your functioning." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 14.00(G)(1)(f).[5]

Section 14.00(G)(3) of the list of impairments states that one of the long-term possible effects of HIV treatment is reduced mental function "including cognition (for example, memory), concentration, and mood." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 14.00(G)(3). According to section 14.00:

> To satisfy the functional criterion in a listing, your immune system disorder must result in a "marked" level of limitation in one of three general areas of functioning: Activities of daily living, social functioning, or difficulties in completing tasks due to deficiencies in concentration, persistence, or pace. Functional limitation may

---

[5] The statute provides the following example of a side effect that could be considered:
> [M]any individuals with immune system disorders receive treatment both for their immune system disorders and for the manifestations of the disorders or co-occurring impairments, such as treatment for HIV infection and hepatitis C. The interactive and cumulative effects of these treatments may be greater than the effects of each treatment considered separately.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 14.00(G)(1)(f).

9

> result from the impact of the disease process itself on your mental functioning, physical functioning, or both your mental and physical functioning. This could result from persistent or intermittent symptoms, such as depression, severe fatigue, or pain, resulting in a limitation of your ability to do a task, to concentrate, to persevere at a task, or to perform the task at an acceptable rate of speed. You may also have limitations because of your treatment and its side effects.

See id. § 14.00(I)(4).

From the medical records it appeared that Claimant's HIV is under control, but the "interactive and cumulative effects" of HIV and Claimant's psychological disorders were not fully evaluated. (Admin. R. at 138-140, 159-542.) See 20 C.F.R. § 404.1520(a)(4). The record does not address the possibility of this connection and does not evaluate Claimant's statement that the depressive disorder could be the result of the HIV. (Id. at 4, 12.) For example, Claimant's appeal to the SSA Appeals Council stated, "[e]very day I live with [my illnesses]. I don't know when or w[h]ere I [am] going to die." (Id. at 4.) Claimant's appeal indicates that his illnesses are causing stress, and perhaps depression.

In addition, while it is clear that Claimant can perform certain daily activities and maintain a level of social function, it is not clear that the HIV has not had an effect on his concentration, persistence, or pace, for example. (Id. at 24-30, 97-104 (describing Claimant's difficulty walking, standing, or lifting due to joint swelling and pain).)

In evaluating Claimant's psychiatric complaints, the ALJ found that that "Dr. Flach noted only mildly impaired attention and concentration and moderately impair[ed] memory. The Claimant had low-average intelligence and good insight and judgment. He is able to do a wide variety of daily activities, including caring for his daughter, cooking, cleaning, and laundry." (Id. at 14.) However, the ALJ failed to consider that he has "mild problems dealing with stress," and a depressive disorder. (Id. at 143.) Dr. Flach found that the "results of the examination do

10

appear consistent with some mild psychiatric problems and possible cognitive difficulties which may mildly interfere with the claimant's ability to function on a daily basis." (Id. at 143.) Yet, the ALJ failed to develop the record as to the connection between Claimant's illnesses and the effect that the physical illnesses may have on Claimant's psyche.

Moving through the five-step analysis, the ALJ properly applied steps four and five, albeit based on the underdeveloped record before her. However, as this analysis was based on the flawed analysis at step three, the ALJ should also reconsider steps four and five.

### B. New Evidence

Claimant has added a letter to the record stating that he has been diagnosed with diabetes. (Pl. Ltr.) Under 42 U.S.C. § 405(g), the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." New evidence must satisfy three criteria: it is new, it is material, and there was good cause for the failure to present the evidence earlier. Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988). Evidence is new if it is not "merely cumulative of what is already in the record." Id. (quoting Szubak v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984)). Materiality requires that the new evidence is "relevant to the claimant's condition during the time period for which benefits were denied," is probative, and creates a "reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." Id. (citing Cutler v. Weinberger, 516 F.2d 1282, 1285 (2d Cir. 1975). Good cause for failure to present the evidence earlier includes the discovery of a new diagnosis from more recent medical evaluation. Tolany v. Heckler, 756 F.2d 268, 272 (2d Cir. 1985) (finding good cause was shown where new

diagnosis was based on recent neurological evaluation and assessment of response to medication that required observation period).

Evidence of Claimant's diabetes complies with the three requirements for new evidence. It is new as it was not discovered until after the final ruling and is found nowhere else in the record. (Pl. Ltr.) If the diabetes is a result of HIV, or if the symptoms in combination are equal to a listed impairment, then it would have been reasonable for the Commissioner to have made a different determination. Therefore, there is a reasonable possibility that the diabetes diagnosis is material. This evidence was not available at the time the ALJ made its ruling because Claimant had not yet been diagnosed with diabetes, and thus, there was good cause for Claimant's failure to present the evidence earlier. See Polard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004). Therefore, the court seeks additional findings as to the severity of the diabetes, and the "interactive and cumulative effects," if any, of diabetes with Claimant's other illnesses as discussed in Part III.A.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's Motion for Judgment on the Pleadings is DENIED, and this case is REMANDED for a proper evaluation of the new material evidence as to Claimant's diagnosis of diabetes, and a reevaluation as to the listed impairments, and combination of impairments in 20 C.F.R. Part 404, Part P, Appendix.[6]

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
August 11, 2014

NICHOLAS G. GARAUFIS
United States District Judge

---

[6] The court does not find that there is unequivocal evidence of disability or that further findings would be unhelpful to assure proper disposition of Claimant's claim; thus, a remand for further proceedings—rather than solely for calculation of benefits—is proper. See Pokorny v. Astrue, No. 09-CV-1694 (NGG), 2010 WL 5173593, at *5 (E.D.N.Y. Dec. 14, 2010); Pogozelski, 2004 WL 1146059, at *20.

12